John A. McGuinn (State Bar No. 36047)
Sharon R. Vinick (State Bar No. 129914)
Noah D. Lebowitz (State Bar No. 194982)
McGUINN, HILLSMAN & PALEFSKY
535 Pacific Avenue
San Francisco, CA   94l33
Tel: (415) 421-9292
Fax: (415) 403-0202

Attorneys for Plaintiff
Anne McCollum

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNE McCOLLUM, | Case No. C 01-1738 CW |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE** |
| vs. | |
| XCARE.NET, INC. and DOES 1-5, inclusive | Date:  Friday, July 13, 2001<br>Time:  10:00 a.m |
| Defendant. | Place:  Crtrm 2 |

**TABLE OF CONTENTS**

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A. THE EMPLOYMENT CONTRACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B. McCOLLUM'S EMPLOYMENT WITH XCARE . . . . . . . . . . . . . . . . . . . . . . 4

IV. LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A. XCARE FAILS TO MEET ITS HEAVY BURDEN OF DEMONSTRATING THAT LITIGATING IN THIS COURT WOULD BE A GREATER INCONVENIENCE TO IT THAN THE INCONVENIENCE THAT LITIGATING IN COLORADO WOULD BE FOR McCOLLUM . . . . . . . . . . . . . . . . . . . . . . . . 5

        1. XCare Misstates the Law in Regard to the Factors it Cites in Its Favor, and Fails to Address Several Additional Factors That Weigh Heavily in Favor of Litigating this Case in this Court . . . . . . . . . . . . . . . . . . . . . . . 6

            a. The "Relevant Agreements" Were All Negotiated and Executed in This Forum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            b. This Court Is Readily Familiar with the California Laws in this Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            c. McCollum's Choice of Forum Is a Very Significant Factor . . . . . 8

            d. Both Parties have Regular Contacts with this Forum and the Causes of Action Arise from Contacts with this Forum . . . . . . . 10

            e. Requiring McCollum to Litigate this Case in Colorado Would Be Extremely Burdensome . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            f. Key Non-party Witnesses Who Are Located in this Forum Are Beyond the Subpoena Power of the Colorado Court . . . . . . 11

            g. Sources of Proof Are Not Extensive and Are Easily Accessed in this Forum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            h. California's Public Policy Weights Heavily in Favor of McCollum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        2. XCare's Race to the Colorado Courthouse Does Not Earn it Any Deference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

McGuinn, Hillsman & Palefsky
535 Pacific Avenue
San Francisco, CA 94133

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO TRANSFER VENUE                                                               i

# TABLE OF AUTHORITIES

## Cases

*Colt Studio, Inc. v. Badpuppy Enterprise*
  75 F. Supp. 2d 1104 (C.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

*Decker Coal Co. v. Commonwealth Edison Co.*
  805 F.2d 834 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11

*E. & J. Gallo Winery v. F. & P. S.p.A.*
  899 F. Supp. 465 (E.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Jarvis v. Marietta Corp.*
  1999 U.S. Dist. LEXIS 12659 (N.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Jones v. GNC Franchising, Inc.*
  211 F.3d 495 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 11, 13

*Los Angeles Memorial Coliseum Comm'n v. National Football League*,
  89 F.R.D. 497 (C.D. Cal. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Pacific Car & Foundry Co. v. Pence*
  403 F.2d 949 (9th Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Qwest Comm. Int'l. v. Thomas*
  52 F. Supp. 2d 1200 (D. Colo. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*St. Paul Fire and Marine Ins. Co. v. Runyon*
  53 F.3d 1167 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Stewart Org. v. Ricoh Corp.*
  487 U.S. 22 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Van Dusen v. Barrack*
  376 U.S. 612 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wilton v. Seven Falls Co.*
  115 S. Ct. 2137 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## Statutes & Rules

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 2201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28 U.S.C. § 2202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Cal. Civil Code § 1646 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Cal. Labor Code § 200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Cal. Labor Code § 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Cal. Labor Code § 216 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Federal Rule of Civil Procedure 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Other Authorities**

17 *Moore's Federal Practice*, § 111.13 (Matthew Bender 3rd ed.) . . . . . . . . . . . . . . . . . . . . . . 6, 11

## I. INTRODUCTION

Plaintiff Anne McCollum ("plaintiff" or "McCollum"), a life-long California resident, was hired by defendant XCare.net, Inc. ("defendant" or "XCare") to work in California as its Director of eHealth Solutions. In her three months of employment with XCare, McCollum managed to transform a limited, short-term contract for services with Marin-based Foundation Health Services ("FHS") into a multi-year, $10-15 million contract (the "XCare-FHS technology partnership contract"). However, just as that contract was about to be finalized, XCare summarily removed McCollum from the FHS account and terminated her employment. The immediate effect of that removal was to cheat McCollum out of a commission in excess of $450,000 from the XCare-FHS technology partnership contract. Due to XCare's termination of McCollum's employment, McCollum has also been forced to take a reduction in salary and now earns only one-half of what she was scheduled to earn with XCare.

## II. PROCEDURAL HISTORY

Though this case is extremely young, there has already been a winding road of procedural tactics undertaken by XCare. This multi-layered overlapping procedural history has been initiated and pursued by XCare through its unabashed forum shopping escapades.

Since her termination in the Fall of 2000, McCollum has attempted to negotiate with XCare.net in order to obtain the compensation owed to her without resorting to litigation. Declaration of Anne McCollum in Support of Plaintiff's Opposition to Motion to Transfer Venue ("McCollum Decl.") at ¶ 15.[1] McCollum, both by herself and with the assistance of counsel, has communicated with XCare. *Id.*; Declaration of Sharon R. Vinick in Support of McCollum's Motion to Dismiss, or in the Alternative, Transfer Venue ("Vinick Decl.") at ¶ 3.[2] As recently as March 29, 2001, McCollum's counsel had discussions with XCare's counsel to explore the

---

[1] The McCollum Decl. is filed concurrently herewith.

[2] The Vinick Decl. has been previously submitted to this Court as Exhibit IV to the Appendix to Plaintiff's Objection to Transfer Request.

possibility of reaching a mediated settlement of this dispute. Vinick Decl. ¶ 3. In the last conversation between counsel, the possibility of mediation was not foreclosed. *Id* Only six business days after the last conversation between counsel, McCollum was served with the a complaint for declaratory relief brought by XCare in the U.S. District Court for the District of Colorado. *Id.* at ¶¶ 4-5. XCare did not inform McCollum or her counsel that it intended on filing this complaint, nor did XCare seek counsel's consent to accept service. *Id.*

After reviewing the Colorado declaratory judgment action and researching the applicable law, McCollum's counsel wrote to XCare's counsel requesting that XCare voluntarily dismiss its complaint and pursue this dispute in the most appropriate venue for this action: The Superior Court of California. Declaration of Noah D. Lebowitz in Support of Plaintiff's Opposition to Defendant's Motion to Transfer Venue ("Lebowitz Decl.")[3] ¶ 4 & Exh. A ("April 24, Letter"). Along with that letter, McCollum's counsel sent XCare's counsel a courtesy copy of the complaint filed on her behalf in the Superior Court. *Id.* McCollum's counsel had held off on drafting and filing that complaint in the hope that the parties could resolve the dispute without litigation. *Id.* at ¶ 3.

As McCollum's deadline to file a motion to dismiss in the Colorado case was approaching, McCollum's counsel then telephoned XCare's counsel seeking a response to the April 24 Letter. *Id.* at ¶ 5. XCare's counsel confirmed receipt of the letter, and stated that his client was considering its response. *Id.* The parties then agreed to extend the time for McCollum to file its motion to dismiss so that XCare could consider its response. *Id.* & Exh. B. Despite XCare's counsel's promise to telephone with its response by early the next week, he failed to do so. *Id.* at ¶ 6. So, McCollum's counsel again called XCare's counsel seeking a response. *Id.* In that call, XCare's counsel stated that the company would not dismiss its Colorado complaint and had authorized its counsel to remove the California complaint to this Court. *Id.* McCollum's counsel then informed XCare's counsel that McCollum would have her

---

[3]The Lebowitz Decl. is filed concurrently herewith.

motion to dismiss on file in Colorado by the next Tuesday, as previously agreed. *Id.*[4]

The following day, McCollum's counsel received XCare's removal papers which included a request to transfer the case to the District of Colorado pursuant to Local Rule 3-13. *Id.* at ¶ 7.[5] As provided by that Local Rule, McCollum then filed her Objection to that request, noting that XCare failed to even mention McCollum's intent to file a motion to dismiss in Colorado. *Id.*; *see also* Plaintiff's Objection to Transfer Request at 4:6-10.[6]

McCollum filed her Motion to Dismiss or in the Alternative Transfer Venue in the Colorado court on May 8. Lebowitz Decl. ¶ 7. That motion has now been fully briefed and is awaiting either ruling or notice of a hearing from the Colorado court. *Id.*

### III. FACTUAL BACKGROUND

Presently, and at all times pertinent to this lawsuit, McCollum was a resident of the State of California. McCollum Decl. ¶ 2. XCare, though based in Colorado, does millions of dollars worth of business in the State of California. *Id.* at ¶¶ 10, 15.

#### A. THE EMPLOYMENT CONTRACT

XCare recruited and hired McCollum to serve as its Director of eHealth Solutions for the company's Western Region. *Id.* at ¶ 3. McCollum's first interview for this position took place at a hotel in San Francisco, California. *Id.* at ¶ 4. On June 16, 2000, XCare sent a letter to McCollum, which was delivered to her home in Walnut Creek, California, detailing XCare's offer of employment ("Offer Letter"). *Id.* at ¶ 5 & Exh. A. McCollum signed that Offer Letter, signifying her acceptance of the offer of employment, on June 21, 2000, while at her home in

---

[4] Based on this history of events it is unfathomable that XCare and its counsel were ignorant, as claimed, of McCollum's intention to file a motion to dismiss in Colorado. *See* Defendant's Memorandum of Points and Authorities ("Def's P&A") at n.1

[5] This case was originally assigned to Magistrate Judge Zimmerman, but was reassigned to this Court on June 5, 2001.

[6] McCollum hereby incorporates by reference her Objection to Transfer Request and Plaintiff's Appendix filed therewith as though fully set forth herein.

Walnut Creek, California. *Id.*

Among other things, the Offer Letter describes McCollum's terms of compensation. *Id.* at ¶ 6 & Exh. A. One of the terms of McCollum's employment was her entitlement to commissions. The Offer Letter refers to a commission schedule which is detailed in a separate document entitled the XCare 2000 Sales Incentive Compensation Plan. *Id.* at ¶ 6 & Exh. B. McCollum also signed that plan, thereby agreeing "to be bound by its terms and conditions." *Id.* McCollum was in Walnut Creek when she executed the commission contract. *Id.*

### B. MCCOLLUM'S EMPLOYMENT WITH XCARE

McCollum was employed by XCare from June to October 2000. *Id.* at ¶ 7. McCollum's only office with XCare was in her home in Walnut Creek, California. *Id.* McCollum's official business address while she worked for XCare was her home address in Walnut Creek. *Id.*

After being hired, McCollum immediately began working on a contract between XCare and one of her former employers, FHS. *Id.* at ¶ 8. FHS is based in Marin County, California. *Id.* One of XCare's primary reasons for hiring McCollum was her prior professional relationship with FHS. *Id.* at ¶ 9. At the time McCollum was hired by XCare, a contract between XCare and FHS was being contemplated, but no significant actions had been undertaken to negotiate such a contract. *Id.* at ¶ 10. That contract was going to be worth approximately $1.3 million in revenue to XCare. *Id.* As soon as McCollum came onto the project, however, she crafted a new agreement that would be worth approximately $10-15 million in revenue to XCare, over a two year period. *Id.* If this contract were executed, McCollum would be entitled to commission in excess of $450,000 under the 2000 Sales Incentive Compensation Plan. *Id.*

Throughout the project, McCollum received praise and encouragement from her immediate supervisor, Laurie Heilmann (Senior Director of Sales). *Id.* at ¶ 11. She also received praise from Heilmann's supervisor, Tom Pianko (Executive Vice President of Sales and Marketing). *Id.*

On October 10, 2000, as the XCare-FHS contract negotiations were on the verge of

completion, and without any prior notice, Heilmann called and emailed McCollum and told her that she was to immediately cease any contact with FHS and that she had been removed from the project. *Id.* at ¶ 12 & Exh. C. Heilmann's basis for this adverse action was that she had purportedly received complaints from employees of both XCare and FHS about McCollum's performance. *Id.* Heilmann gave McCollum the "choice" of going on a performance plan or accepting a 30-day transition plan in which McCollum would be phased out her work for the company. *Id.* The next day McCollum learned from Pianko that he had never heard any complaints about her performance. *Id.* at ¶13. He attributed the problem to a "personality conflict" between McCollum and Heilmann. *Id.*

McCollum was then told by XCare's Human Resources Department that she had voluntarily resigned as of October 13, 2000. *Id.* at ¶ 14. McCollum responded that she had never offered her resignation, and that she had simply agreed to enter into a 30-day transition period as agreed between herself and Heilmann. *Id.* XCare refused to accept McCollum's statement and terminated her employment as of October 13, 2000. *Id.*

Within 30 days of McCollum's termination, XCare and FHS executed the final contract. *Id.* at ¶ 15. McCollum wrote to XCare and requested payment of her commission for her work on that contract. *Id.* XCare never even bothered to respond to McCollum's request, therefore, McCollum concluded that XCare refused to pay her. *Id.*

## IV. LEGAL ARGUMENT

### A. XCARE FAILS TO MEET ITS HEAVY BURDEN OF DEMONSTRATING THAT LITIGATING IN THIS COURT WOULD BE A GREATER INCONVENIENCE TO IT THAN THE INCONVENIENCE THAT LITIGATING IN COLORADO WOULD BE FOR McCOLLUM

In bringing this motion, XCare "bears a heavy burden of showing a clear balance of inconveniences to it." *E. & J. Gallo Winery v. F. & P. S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994) (citations omitted). Merely shifting the inconveniences from one party to another – as opposed to eliminating all inconveniences – is not a sufficient reason for transferring venue. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *see also Colt*

*Studio, Inc. v. Badpuppy Enterprise*, 75 F. Supp. 2d 1104, 1112-13 (C.D. Cal. 1999). As demonstrated below, XCare relies on misleading, incomplete, and, arguably untrue statements to support its motion. *See generally*, McCollum Decl. ¶¶ 20-34. Such spin cannot be relied upon to deny McCollum her right to litigate this case in a forum that is legitimate and of her choosing. As such, this Court should deny XCare's motion.

### 1. XCare Misstates the Law in Regard to the Factors it Cites in its Favor, and Fails to Address Several Additional Factors That Weigh Heavily in Favor of Litigating this Case in this Court

In applying Section 1404(a), the courts have looked at a vast array of factors, and take each case as an individualized set of facts and circumstances. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000); *see also* 17 *Moore's Federal Practice*, § 111.13 (Matthew Bender 3rd ed.). As recently as last year, the Ninth Circuit articulated those factors as follows:

> (1) the location of where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contact with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. . . . *We also conclude that the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing.*

*Jones*, 211 F.3d at 498-99 (emphasis added). All of these factors weigh heavily in favor of McCollum's choice of forum. XCare failed even to address most of these factors (or cite the *Jones* case), instead focusing almost exclusively on the fact that it raced to the Colorado courthouse to file an ill-crafted declaratory judgment action.[7]

### a. The "Relevant Agreements" Were All Negotiated and Executed in this Forum

The Ninth Circuit has held that the negotiation and execution of relevant agreements in California is a substantial factor in determining that California is a proper forum. For example, in *Jones*, the relevant agreements to that lawsuit were the franchise and option agreements

---

[7] XCare makes other similarly untenable arguments that are addressed in turn.

between the parties. 211 F.3d at 496. Despite the fact that those agreements each contained a forum selection clause designating Pennsylvania, the Ninth Circuit relied on the fact that the agreements were negotiated and executed in California when it affirmed the district court's denial of transfer. *Id.* at 499.

There are arguably three "relevant agreements" in this case: (1) the Offer Letter, (2) the 2000 Sales Incentive Compensation Plan, and (3) the XCare-FHS technology partnership contract. All of these contracts were negotiated and executed in the Northern District of California. McCollum Decl. ¶¶ 5, 6, 27. The Offer Letter was mailed to McCollum's home/office in Walnut Creek. It was there that McCollum reviewed and executed that letter. *Id.* at ¶ 5. The 2000 Sales Incentive Compensation Plan was sent to McCollum's home/office in Walnut Creek. *Id.* at ¶ 6. It was there that she reviewed and executed that agreement. *Id.* The XCare-FHS technology partnership contract was negotiated almost exclusively in this forum. *Id.* at ¶ 27. The meetings among XCare employees and face-to-face negotiations with FHS all occurred in California. *Id.*

As the only evidence before this Court is that the relevant agreements were negotiated and executed in this forum, this element weighs heavily in favor of McCollum.

     **b. This Court Is Readily Familiar with the California Laws in this Case**

There can be no doubt that this Court has a higher degree of familiarity with the relevant California laws than the Colorado District Court. As McCollum signed her contracts and performed her contractual obligations in the State of California, her employment with XCare – particularly her method and manner of compensation – are governed by California law. *See, e.g.*, Cal. Civil Code § 1646 ("A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law of the place where it is made"); Cal. Labor Code §§ 200 ("wages" include commission), 201 (unpaid commissions must be paid to terminated employee within 72 hours of termination), 216 (willful failure to pay commissions is a misdemeanor). XCare has not argued

that any law other than California applies to McCollum's employment relationship with the company. Indeed, McCollum's complaint is based exclusively on California law, including causes of action under the California Labor Code, Business and Professions Code, and California common law. *See generally* Complaint. The familiarity with such distinct provisions of California law weighs heavily in favor of hearing this lawsuit in this Court. *See Van Dusen v. Barrack*, 376 U.S. 612, 645 (1964) (citing as an important factor that the trial be held in the district "in which the federal judges are more familiar with the governing laws."); *see also Jarvis v. Marietta Corp.*, 1999 U.S. Dist. LEXIS 12659 (N.D. Cal. 1999) (ordering transfer of action to New York because the employment contract was expressly governed by New York law, thus, the New York federal courts would have a greater familiarity with that law.).

       **c.**  **McCollum's Choice of Forum Is a Very Significant Factor**

  Despite XCare's attempts to minimize its import, McCollum's choice of forum is a very significant factor in this analysis. "This is particularly so when the forum chosen is not only the plaintiff's domicile but also has a significant connection with the subject matter of the case." *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 89 F.R.D. 497, 499 (C.D. Cal. 1981) (citations omitted). In assessing this factor, this Court must consider "the extent both of the defendant's business contacts with the chosen forum and . . . the plaintiff's contacts, including those relating to [her] cause of action." *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968).

  The plaintiff's choice of forum is only minimized when the forum has no relation to the operative facts of the complaint and "the forum has no interest in the parties or the subject matter" of the lawsuit. *Id.* Neither is the case here. McCollum lived and worked in this District for the entirety of her employment with XCare. McCollum Decl. ¶¶ 2-34. McCollum was terminated in this District. *Id.* at ¶¶ 12-15. This forum clearly has an interest in McCollum and her employment with a foreign corporation that does millions of dollars of business in the State of California. *Id.* at ¶¶ 10, 29 & Exh. D. Moreover, XCare maintains its Western Regional

1  Office in Woodland Hills, California, and Pianko and Heilmann made regular trips to Northern
2  California to participate in negotiations regarding the XCare-FHS technology partnership
3  contract. *Id.* at ¶¶ 27, 29.
4       XCare's attempt to limit the "operative facts" to the "decisions" to cheat McCollum out
5  of her commission and terminate her employment is unwarranted.  First, XCare has not
6  submitted any admissible evidence that these "decisions" were made in Colorado.  The only
7  evidentiary citations provided for this allegation is Blodgett's affidavit.  *See* Def's P&A at 14:2-
8  15:6.  However, by his own admission, Blodgett did not participate in any of these decisions.
9  Blodgett Affid. at ¶ 7; *see also* McCollum Decl. at ¶ 21.  Thus, his testimony is inadmissible
10 hearsay.  Indeed, as McCollum's declaration states, she was informed of the "decision" by
11 Heilmann, who lived and worked in Seattle, Washington.  McCollum Decl. at ¶ 30.  Second, the
12 truly "operative facts" span the entire employment relationship, not just the final wrongful acts.
13 For instance, McCollum's employment agreements certainly fall within the scope of "operative
14 facts".  So does McCollum's performance and professional interactions with FHS.   Again,
15 contrary to Blodgett's hearsay testimony, McCollum has extremely limited contacts with
16 Colorado during her employment with XCare.  *See* McCollum Decl. at ¶¶ 22, 23, 26, 27, 28, 30.
17 Thus, the vast majority of the operative facts unquestionably took place in this forum.
18      XCare's reliance upon *Jarvis v. Marietta Corp.*, *supra*, on this point is unpersuasive and
19 easily distinguished.  In *Jarvis*, as XCare concedes, the defendant's *only* contact with California
20 was four employees with home offices.  The present case is of a far different nature.  XCare
21 maintains its Western Regional Office in California.  McCollum Decl. at ¶ 29.  XCare employs
22 at least 20 people in California.  *Id.*  Moreover, senior executives, like Pianko and Heilmann,
23 regularly make business trips and engage in negotiations with California companies in pursuit of
24 business for XCare.  *Id.* at 27.  Additionally, unlike *Jarvis*, McCollum was not hired under the
25 laws of Colorado, nor were her terms and conditions of employment covered by Colorado law.
26 Despite XCare's attempt to fabricate similarities between this case and *Jarvis*, McCollum never
27

received any customer service, pricing, or marketing support from the Colorado office. *Compare* Blodgett Decl. ¶ 5 *with* McCollum Decl. ¶ 28; *Jarvis*, 1999 U.S. Dist. LEXIS at *3-4

Accordingly, McCollum's choice of forum is afforded the greatest weight available and heavily favors denying XCare's Motion.

### d. Both Parties Have Regular Contacts with this Forum and the Causes of Action Arise from Contacts with this Forum

Both parties have extensive contacts with this forum and the causes of action all arise from contacts with this forum. As previously stated, McCollum has lived in this District almost her entire life. *Id.* at ¶ 2. She was recruited, interviewed, and contracted to work by XCare in this forum. *Id.* at ¶¶ 3-7. Likewise, XCare has significant, regular contacts with this forum. The company does millions of dollars worth of business in this forum. *Id.* at ¶¶ 10, 29. XCare also maintains permanent employees all over the State of California, including its Western Regional Office in Woodland Hills, California. *Id.* at ¶ 29. Moreover, all of the face-to-face meetings regarding the XCare-FHS technology partnership contract occurred in California. *Id.* at ¶ 27. FHS is located in Marin County and Pianko and Heilmann traveled to this forum to attend meetings and negotiations with FHS. *Id.* at ¶¶ 8, 16, 27.

As XCare has demonstrated its regular participation with this forum, it should prove no burden for it to litigate this case here.

### e. Requiring McCollum to Litigate this Case in Colorado Would Be Extremely Burdensome

In contrast to XCare's ease of litigating in this forum, requiring McCollum to travel to Colorado to prosecute this litigation would be an inordinate cost upon her. In comparison, XCare employees regularly travel to this forum as part of their business requirements. *Id.* at ¶ 27. McCollum is employed in this District by another company at a significantly lower salary than what she would have earned with XCare. *Id.* at ¶ 2. Requiring McCollum to litigate this case in Colorado would cause her significant inconvenience. *Id.* For instance, she would have to use vacation time to attend depositions and trial. *Id.* As a new employee at her current

employer, she does not have any vacation for the next six months. *Id.* Also, trial schedules in federal court are often fractured over the course of weeks, leaving the Court time to attend to other regularly scheduled business. If this Court transfers this case to Colorado, McCollum would have to spend all "down time" during trial in Colorado. However, if this case were permitted to go forward in this Court, McCollum could use "down time" to attend to work duties, thereby minimizing the burden upon her. *Id.* In comparison, XCare's prior conduct demonstrates that it can easily attend to business while in California. *Id.* at ¶ 27. Thus, the burden upon it in litigating here is minimal.

As transferring this case to Colorado would only serve to shift the burden of inconvenience from one party to another, it cannot be grounds for granting XCare's motion. *Decker,* 805 F.2d at 843; *Colt Studio*, 75 F. Supp. 2d at 1112-13.

### f. Key Non-party Witnesses Who Are Located in this Forum Are Beyond the Subpoena Power of the Colorado Court

One of the most important factors in considering a Section 1404(a) motion is a party's ability to call non-party witnesses to testify. Pursuant to F.R.Civ.P. 45, a non-party may only be compelled to testify if s/he resides within 100 miles of the place of the hearing or trial. F.R.Civ.P. 45(b). "Thus, that *a majority of non-party witnesses* are not subject to the compulsory process of one of the courts, but are within the subpoena power of the other, *militates heavily in favor of the latter district*." 17 *Moore's Federal Practice* at § 111.13[1][g] (citations omitted) (emphasis added); *see also Jones*, 211 F.3d at 499.

McCollum's performance in driving the FHS-XCare technology partnership contract is crucial to both McCollum's claim for damages and XCare's defense in this case. *Id.* at ¶ 8 & Exh. C. Indeed, XCare specifically contends that it received complaints from FHS personnel about McCollum's performance. Def.'s P&A at 4:13-15. XCare relied upon those purported complaints to remove McCollum from the FHS account, refuse to pay her commissions, and terminate her employment. McCollum Decl. at ¶ 8 & Exh. C. McCollum contends that these purported complaints are fabricated. That fabrication serves as the basis for many of her causes

of action, particularly McCollum's Second Cause of Action for breach of the covenant of good faith and fair dealing. *See* Complaint at ¶¶ 39-44. That being the case, it is imperative that McCollum be able to call FHS witnesses to the stand at trial. FHS is not a party to this lawsuit, nor are any of its employees. All FHS witnesses are located in the Northern District of California.[8] McCollum Decl. at ¶ 16.

As these non-party witnesses reside in the Northern District of California, they are beyond the subpoena power of the Colorado court and McCollum will be severely prejudiced at trial if she is unable to call these non-parties as witnesses.

### g. Sources of Proof Are Not Extensive and Are Easily Accessed in this Forum

XCare takes great pains to declare that the documents relevant to this lawsuit are all located in Colorado and that it would be extremely burdensome to force it produce such documents in this forum. This assertion is both misleading and overblown.

First, no matter where this case is ultimately tried, McCollum's attorneys are located in San Francisco, California. McCollum intends on maintaining her current counsel as her representatives if this case is transferred to Colorado. *Id.* at ¶ 35. Thus, regardless of where this case is litigated, XCare will have to produce all relevant documents to McCollum's counsel in San Francisco.

Second, the volume of relevant documents is anything but burdensome. This is an individual employment-related lawsuit, not a class action or complex business case. McCollum only worked for XCare for three months. Therefore, documents relating to her employment could not possibly be too voluminous. Moreover, McCollum disputes the characterization of the categories of documents described by XCare. *Compare* Blodgett Affid. at ¶ 11, *with* McCollum Decl. at ¶ 34. For instance, McCollum never received any performance reviews and only received one commission payment. Thus, documents in those categories will be minimal.

---

[8]FHS (now known as Health Net) has its headquarters in Marin County, California which lies in the Northern District of California.

1  Moreover, her three month employment could not have generated many documents in the
2  category of payroll documents. All told, the documents listed by XCare could only total
3  approximately 50 to 60 pages.
4      In sum, it is no extra burden for XCare to produce the relevant documents if the litigation
5  were maintained in this District.

          **h.    California's Public Policy Weighs Heavily in Favor of McCollum**

    Finally, California's public policy is directly implicated in this lawsuit. California clearly has a strong interest in ensuring that its citizens are not cheated by foreign corporations doing business in this state. *See Jones*, 211 F.3d at 499 (holding that California has a "strong public policy to provide a protective local forum" for its citizens to litigate against foreign corporations doing business in California.). In addition, McCollum's complaint specifically alleges that XCare's actions violated the public policy of this state. *See* Complaint at ¶¶ 57-61. A contrary ruling would be tantamount to compounding the exploitations of workers in California by foreign corporations by adding the extra burden of forcing the employees to vindicate their rights in a far away forum. As such, this "significant factor" (*Jones*, 211 F.3d at 499 (citing *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)) weighs exclusively in favor of McCollum.

          **2.    XCare's Race to the Colorado Courthouse Does Not Earn it Any Deference**

    In a blatant example of disapproved procedural fencing, while the parties were negotiating pre-litigation settlement, XCare raced to the Colorado courthouse and hastily filed a complaint against McCollum based entirely upon the Federal Declaratory Judgments Act (28 U.S.C. §§ 2201, 2202). In this motion, XCare argues that it should be afforded deference because it filed its declaratory judgment complaint in Colorado first. Def's P&A at 9:8-10:3, 13:1-14:1. However, filing a complaint in a declaratory judgment action achieves no special treatment. *See Qwest Comm. Int'l. v. Thomas*, 52 F. Supp. 2d 1200, 1206 (D. Colo. 1999) ("the

presumption usually afforded the party who files first is not a mechanical rule. The mere fact that a declaratory judgment action . . . is first-filed . . . does not entitle that action to deference." (citations omitted)); *see also Wilton v. Seven Falls Co.,* 115 S. Ct. 2137, 2139 (1995) (permitting stay of declaratory judgment action where subsequent court action filed more than one month later); *St. Paul Fire and Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1168 (10th Cir. 1995) (permitting dismissal of federal declaratory judgment action subsequent court action filed one day later). As the court explained in *Qwest*,

> *Wilton* makes it clear that the court must decide which case will more fully serve the needs and convenience of the parties and provide a comprehensive solution of the general conflict rather than rely mechanically on which case was filed first.

52 F. Supp. 2d at 1206. Accordingly, the fact that XCare filed its declaratory judgment action before McCollum filed this case is of no moment. Additionally, as explained above, McCollum has challenged XCare's lawsuit in Colorado. That court is currently considering McCollum's Motion to Dismiss.

Moreover, XCare's attempt to narrow the scope of McCollum's complaint to the declaratory judgment issues is without basis. In fact, McCollum is seeking damages not only in the amount of the lost commissions, but also for wrongful termination, which gives rise to general damages (emotional distress and back pay), punitive damages, statutory attorneys' fees, and equitable relief (including front pay). *See generally*, Complaint. A declaration of rights under the 2000 Sales Incentive Compensation Plan, the only relief contemplated by XCare's Colorado complaint, would have no effect whatsoever on McCollum's rights to recover under her wrongful termination cause of action. Accordingly, resolving XCare's declaratory judgment case would not even come close to settling the entire real controversy.[9]

///

///

---

[9] In addition, it is unclear how Blodgett, a human resources specialist at XCare, can purport to testify to the purely legal conclusion that "The Colorado action will conclusively resolve the issue." (Def's P&A at 13:19-20 (citing Blodgett Affid. ¶12))

**V. CONCLUSION**

Based on the foregoing, McCollum respectfully requests that this Court deny XCare's motion to transfer venue.

DATED: June 22, 2001        McGUINN, HILLSMAN & PALEFSKY
                            Attorneys for Plaintiff McCOLLUM


                            By: _____/s/_____
                                   NOAH D. LEBOWITZ

McGuinn, Hillsman & Palefsky
535 Pacific Avenue
San Francisco, CA 94133

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE — 15